IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

AGATHA HARRIS                              *

      Plaintiff,                      *

          v.                      * CIVIL ACTION NO. 2:03-CV-596-F
                                                          (WO)
FORMER WARDEN HARRELSON,        *
*et al.*,
                                           *
      Defendants.

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

Plaintiff, Agatha Harris ["Harris"], filed this action pursuant to 42 U.S.C. § 1983 on 4 June 2003 while incarcerated at the Elmore Correctional Center.[1] Seeking monetary and injunctive relief, Harris sues the Alabama Department of Corrections Commissioner Donal Campbell, Former Warden Earnest Harrelson ["Harrelson"], Sergeant William Howard ["Howard"], Nurse Deborah Austin ["Nurse Austin"], NaphCare, Inc., and Correctional Officer Jerry Miller ["Miller"].[2]  Defendants are sued in their individual and official

_____

[1]Since filing this complaint, Plaintiff has been released from custody.

[2]Plaintiff also filed this action against Correctional Officer Powell.  Service of the complaint on this individual, however, was never properly effected as he was no longer employed by the Alabama Department of Corrections when the complaint was served on the named defendants.  (*See* Doc. No. 14.)  Plaintiff was advised in the court's June 10, 2003 order of procedure that it was his responsibility both to furnish the Clerk's Office with accurate addresses for the defendants he wished to serve and to monitor the case to make sure the persons whom he wished to sue were served.  The order further instructed Plaintiff that if a person was not served, he would not be a party to this lawsuit.  (*See* Doc. No. 5.)

capacities.  Harris alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments when they: (1) caused him to be injured while he worked at a recycling center; (2) did not provide adequate medical treatment for his injuries; and (3) issued him a disciplinary for refusing to work at the recycling center.

Pursuant to the orders of this court, Defendants filed special reports (Doc. Nos. 14 & 50) and supplemental responses (Doc. Nos. 22 & 37), including supporting evidentiary material, addressing Harris' claims for relief.  The court deems it appropriate to treat the special reports as motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof, and Harris' responses thereto (Doc. Nos.  20, 41 & 55), the court concludes that the motions for summary judgment should be granted.

## II.   DISCUSSION

### A.    *The Claims for Injunctive Relief*

During the pendency of this action, Harris was released from custody.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also* **Cotterall v. Paul**, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

Harris' release has rendered his request for injunctive relief moot, and that claim should be dismissed.

**B.**     *Standard of Review*

To survive Defendants' properly supported motions for summary judgment, Harris is required to produce some evidence supporting his constitutional claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).

Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

3

*C.*     *Unsafe Work Environment*

While working at the Elmore Correctional Center Recycling Plant on 5 June 2001 Harris sustained an on-the-job injury while standing on top of two oil buckets  separating plastics which were moving along a conveyor belt.  Suddenly, the buckets overturned, as a result of which Harris injured his lower legs as he fell.  Thereafter, Harris contends that Miller escorted him to the backgate and asked Officer Powell, who was officer-in-charge, what to do about his injury.  Pursuant to instructions from Howard, Officer Powell instructed Harris to return to work.  Later that same evening, medical personnel examined and treated Harris' injuries, and on the next day, he was seen by a nurse who gave him medication for his legs.  (Doc. No. 1.)

Harris complains that Defendants' forced him to work in an unsafe environment  at the Elmore Correctional Center Recycling Plant, thus violating his Eighth Amendment right to be free from cruel and unusual punishment.  Prison working conditions are subject to scrutiny under the Eighth Amendment.  The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  A prison official violates the duty of care owed to inmates in his custody when by act or omission, he is deliberately indifferent to conditions which pose a substantial risk of serious harm. *Farmer*, 511 U.S. at 834.

4

"To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). *See Farmer,* 511 U.S. at 837 (holding that the subjective test for deliberate indifference requires that the official both know of and disregard an excessive risk of harm). The legal conclusion of deliberate indifference must rest on facts clearly evincing "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). In the workplace safety context, mere negligence or inadvertence resulting in injury is insufficient to constitute deliberate indifference. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991); *see also Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) (stating that a deliberate indifference state of mind requires a showing of more than mere negligence); *Daniels v. Williams*, 474 U.S. 327, 333 (1986).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Id*. at 838.

Harris maintains in conclusory fashion that he was forced to work in an unsafe environment at the Elmore Correctional Center Recycling Plant when he fell off oil buckets

while separating recycling material.  Even if Harris could show that the Defendants were aware that the manner in which he was working created a safety concern, that would not be sufficient to demonstrate indifference to workplace safety.  Harris does not allege that Defendants knew of and disregarded the risk that actually caused his accident. At most, Defendants were negligent for allowing him to work in conditions which made his accident possible.

Harris cannot base an Eighth Amendment claim on mere negligence  -  it is simply insufficient to  state a violation of constitutional rights. *See **Daniels v. Williams***, 474 U.S.  at 333-36; *see **Farmer**,* 511 U.S. at 840  (Eighth Amendment liability requires consciousness of risk). Harris has failed to present, or point to, any evidence in the record to support his contention that any of the named Defendants acted with "deliberate indifference" to a substantial risk of harm. *See **Whitley**,* 475 U.S. at 319 (holding that a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's ... safety"); ***Daniels***, 474 U.S. at 332 ("we must never forget it is *a constitution* we are expounding" (quoting ***McColloch v. Maryland***, 4 Wheat (17 U.S.) 316, 407 (1819) (emphasis in original)).  In light of the foregoing, the court concludes that Defendants should be granted summary judgment on this claim.


**D.    *Medical Treatment***

Harris  alleges that Defendants acted with deliberate indifference to his health by failing to provide him with adequate medical care after he injured his legs on June 5, 2001

while working at the recycling center. He also alleges that he developed a rash and/or infection on his arms which was caused by working with hazardous material at the recycling plant. (Doc. No. 1.)

Defendants deny that they acted with deliberate indifference to Harris' medical needs. According to Harrelson, injuries sustained by inmates working at the Elmore Correctional Center Recycling Plant were to be reported to the officer on duty at the recycling plant.  The inmate would then be escorted to the infirmary at the Staton Correctional Facility for treatment.  Prison policy and procedure also required correctional personnel to complete an incident report for placement in the injured inmate's institutional file.  Defendants maintain that a review of Harris' institutional file contains no documentation showing that he was injured at the recycling facility at any time in 2001 or that he made a report of any such injury to correctional officials.   (Doc. No. 14, Harrelson Affidavit.)

A review of the evidentiary material before the court shows that medical personnel examined Harris at approximately 8:20 p.m. on the evening of 5 June 2001 for his complaint that he" fell off a machine at recycling & my legs are burning.  I don't know what kind of liquid it was."  Harris' examination revealed "2 scrapes on each shin.  No bruises. Area on R/shin [with] some edema at one abrasion. No rash or discoloration noted to legs."  The abrasions were cleansed with betadine and bandages were applied.  Harris was advised to keep the dressing dry.

He was seen again by medical personnel on 6 June 2001 for his complaint that he scraped his legs.  Medical personnel observed the abrasions to his right and left legs, and

noted that a physician would review his complaint. Four days later, on 10 June 2001, Harris was examined at the infirmary for his complaint of a rash or infection on his right arm. Medical personnel observed a small round rash to Harris' inner lower forearm which appeared to be fungal in nature. Because fungal cream was already on order for Harris for treatment of athlete's foot, no further treatment was indicated. Medical personnel continued to examine and treat Harris and to prescribe medication for his continued complaints of an itchy rash on his arm. (Doc. Nos. 14, 20, 50 - Plaintiff's Medical Records, & 55, Exhs. A-G.)

As an inmate sentenced to confinement, Harris was entitled to receive treatment for his serious medical needs. *See Estelle*, 429 U.S. at 106. Failure to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners," results in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *Id.* at 104; *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). An inadvertent failure to provide adequate medical care, however, cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06 (footnote omitted).

To state a valid claim of medical mistreatment under the Eighth Amendment, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness

8

of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk.  *See Farmer*, 511 U.S. at 834.

In *Farmer*, the Court noted that "deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other . . ." *Id*. 511 U.S. at 836.  A claim for inadequate medical care under the Eighth Amendment will not succeed unless the treatment rendered was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *Id*.  Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at  837.   Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which an inmate desires.  *See Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985).  Further, a showing of negligence, neglect, or medical malpractice is insufficient to establish a constitutional violation.  *Rogers*, 792 F.2d at 1058; *see also Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally

exacerbate the medical problem. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994).Harris on 5June 2001 while he was working at the recycling plant, the evidence before the court reflects that Harris received examination and treatment for his complaints of abrasions to his legs at approximately 8:20 p.m on 5 June 2001 and again on 6 June 2001. Medical staff found no other injuries, nor did Harris articulate any other complaints.

Thus, despite any delay that Harris encountered with respect to receiving medical attention for the abrasions he sustained to his, there is no medical evidence that Harris' injuries required more immediate care and/or that any delay in receiving treatment caused irreparable harm. Plaintiff's medical records also show that medical personnel examined and treated him on numerous occasions for his complaints of a skin rash. (Doc. No. 50 - Plaintiff's Medical Records, Doc. No. 55, Exh. A.)

Here, the medical records affirmatively reflect that Harris received responsive and appropriate health care for his complaints regarding a skin rash and injury to his legs. No evidence exists tending to show that Defendants demonstrated deliberate indifference towards Plaintiff's medical needs by intentionally or deliberately delaying or withholding necessary medical treatment, or by interfering with his ability to access such treatment.

Harris, therefore, fails to present evidence demonstrating that Defendants in any way disregarded a substantial risk to his health by purposely delaying or denying him adequate medical treatment. *See Taylor v. McDuffie*, 155 F.3d 479, 482 (4th Cir.1998) (concluding that inmate's complaint of abrasions on wrists and ankles and swelling around jaw area were

10

constitutionally insignificant for Eighth Amendment purposes); *Hamm v. DeKalb County*, 774 F.2d. 1567, 1575 (11th Cir. 1985) (deliberate indifference to serious medical needs was not established where the only medical problem alleged to have gone untreated was a rash); *Roberts v. Peters*, 129 F.3d 119 (7th Cir. 1997) (table) (noting that whether a skin rash on various parts of the plaintiff's body is a type of serious medical condition necessary to support an Eighth Amendment violation is debatable); *Wilson v. Franceshi*, 735 F. Supp. 395 (M.D. Florida 1990) (finding that itching does not constitute a "serious medical need").

The court, therefore, concludes that Harris has failed in his burden of setting forth specific facts to support his allegations against Defendants of inadequate medical treatment tending to show the existence of a genuine and material issue of fact for trial.  While Harris argues that more could have been done for his medical complaints, or alternatively, he disagrees with what was actually done, such assertions do not support a claim under § 1983. *Hamm*, 774 F.2d at 1575.

### E.    *The Disciplinary Claim*

Harris complains that he received a disciplinary notice on 10 December 2001 for refusing to work.  He contends that he did not want to to work at the recycling facility which he considered an unsafe environment.[3]  The court understands Harris to assert a due process

---

[3]Plaintiff alleges that he made several requests to a staff physician for a medical profile which would restrict him from working at the recycling plant as a result of a persistent skin rash

challenge to the issuance of the disciplinary based on his belief that his conduct was justified by the existence of a skin rash which he contends came from various skin irritants he came in contact with  at the recycling facility. (Doc. No. 1.)

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  Thus, due process is required only if a person is deprived of an interest protected by the Due Process Clause.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court abandoned the *Thompson*,[4] *Olim*,[5] and *Hewitt* [6] methodology for determining the existence of a liberty interest.

Under the methodology of those cases, a court ascertained whether a state created a liberty interest protected by the Due Process Clause by reviewing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion."  In *Sandin*, the Court directed that when determining whether a constitutionally protected interest exists, courts must look to the nature of the deprivation rather than statutory or regulatory language.

---

which he asserts was caused by skin irritants he came in contact with at work.  No such profile was ever issued to Harris.  He did, however, receive a job change in August 2001.  Nonetheless, Plaintiff indicates that his skin rash and associated itching persisted for another six months.  (*See* Doc. No. 20, Exh. 5 - Disciplinary Form and attachments, Doc. No. 50, Plaintiff's Medical Records.)

[4]*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989).

[5]*Olim v. Wakinekona*, 461 U.S. 238 (1983).

[6]*Hewitt v. Helms*, 459 U.S. 460 (1983).

Following *Wolff*,[7] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . .  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

**Sandin,** 515 U.S. at 483-84 (footnote added) (citations omitted).

Following the reasoning of the Supreme Court in **Sandin**, the undersigned concludes that the **Sandin** decision makes clear that the Due Process Clause is implicated only when the actions taken against an inmate represent a "dramatic departure" from the ordinary conditions of incarceration.  *Id*. 515 U.S. at 485.  Where the loss suffered by a plaintiff amounts to a grievous loss of a substantive interest, the protection of the Due Process Clause is invoked. *Id*. at 485-86.

In the instant cause of action, the following, even taken together, do not reflect  a "dramatic departure" from the Harris' temporary loss of visitation, store, and telephone privileges and his housing at Staton Correctional Facility after he was found guilty of refusing to work based on medical reasons for which he could not produce a medical stop-up, does not represent a "dramatic departure" from the ordinary conditions of confinement.  *Id.* at 485.  Defendants' dispositive motion regarding this claim is, therefore, due to be granted.

---

[7]*Wolff v. McDonnell*, 418 U.S. 539 (1974).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Harris' request for injunctive relief be dismissed as moot;

2.  The motions for summary judgment filed by Defendants (Doc. Nos. 14 & 50) be GRANTED;

3.  Judgment be ENTERED in favor of Defendants and against Harris;

4.  This case be dismissed with prejudice; and

5.  The costs of this proceeding be taxed against Harris.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **4 August 2005.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of*

14

*Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 19th day of July, 2005.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE